## Stephen W. Rawson v. Bethesda Baptist Church.

### Gen. No. 11,969.

1. TRUST DEED—*when becomes functus officio.* A trust deed after confirmation of the report of sale in a foreclosure proceeding is deemed to have spent its force.

2. INSURANCE POLICY—*when mortgage clause of, becomes extinguished.* After foreclosure sale the mortgage clause contained in an insurance policy is extinguished.

3. ASSUMPSIT—*when lies to recover money paid under mistake of law.* Where a loss occurs and the insured pays the same by draft to the joint order of parties appearing in interest and one of them, under a mistake of law, endorses the same to the other, the party so mistak-

enly making such endorsement may recover in assumpsit, where there was no special consideration for the endorsement.

Action in assumpsit. Appeal from the Superior Court of Cook County; the Hon. ELBRIDGE HANECY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1904. Affirmed. Opinion filed October 27, 1905.

**Statement by the Court.**   This is an action in assumpsit, for money had and received, by appellee against appellant.   The case was heard in the court below upon the following stipulated facts:

"1.   The plaintiff borrowed five thousand dollars ($5,000) upon the church property owned by it, giving a note therefor, secured by a trust deed to the defendant, Stephen W. Rawson, as trustee.

2.   A fire insurance policy for two thousand dollars ($2,000) was obtained by the plaintiff upon the church building, on said property, which policy contained the usual mortgage clause making loss, if any, payable to the defendants, as trustee.

3.   The note not being paid, the trust deed was foreclosed in the Superior Court of Cook County, and a decree of sale entered April 24, 1900.   Pursuant to said decree, the master sold the property on May 28, 1900, to the complainant in said foreclosure suit, James Longley, for the sum of five thousand five hundred and fifty dollars ($5,550), and he obtained from said master a certificate of purchase dated May 28, 1900.   The master reported that he received from said sale the sum of five thousand five hundred and fifty dollars ($5,550); that he paid complainant, James Longley, four thousand nine hundred fourteen and fifty-eight one-hundredths dollars ($4,914.58) on the original debt, and that there remained a deficiency of four hundred sixteen and five one-hundredths dollars ($416.05) still due said complainant.   On June 8, 1900, the master's report of sale and distribution was confirmed, and a deficiency decree for four hundred sixteen and five one-hundredths dollars ($416.05) was entered on that date.

4.   The church building on said property was destroyed

by fire on the night of May 29, 1900, the next day after the sale by the master. The loss, under the insurance policy, was settled with the insurance company at the sum of one thousand five hundred dollars ($1,500), for which sum the insurance adjuster made his draft on the insurance company, payable to the joint order of the trustees of the plaintiff church and the defendant as trustee, dated June 28, 1900, which draft was thereafter duly endorsed by said trustees of the plaintiff, in blank, and delivered by the agent of the insurance company to the defendant, who afterwards, on June 28, 1900, collected the same from the insurance company. ·

5. Said defendant out of said sum of one thousand five hundred dollars ($1,500), on June 28, 1900, paid and satisfied in full said deficiency decree, amounting to the sum of four hundred seventeen and twenty one-hundredths dollars ($417.20).

6. The plaintiff did not redeem from said foreclosure sale, and a master's deed was executed and delivered by John J. Healy to the purchaser at said foreclosure sale, James Longley, dated September 10, 1901.

7. The plaintiff made no demand on the defendant for the return of said insurance money until October 15, 1901."

The foregoing facts were supplemented by the testimony of David C. Smith on behalf of the plaintiff and Charles P. Kenning on behalf of the defendant.

A jury was waived, and the cause was submitted to the court. The finding of the court was in favor of the plaintiff, assessing damages against the defendant in the sum of $1,213.67, for which judgment was rendered.

WHEELOCK, SHATTUCK & NEWEY, for appellant.

JAMES E. WHITE and HECKMAN, ELSDON & SHAW, for appellee; HECKMAN, ELSDON & SHAW, of counsel

MR. PRESIDING JUSTICE SMITH delivered the opinion of the court.

It is the contention of appellant that appellee made a

voluntary payment of the money received from the insurance company, with full knowledge of all the facts, and that it cannot recover the money back even though the money was paid under a mistake of law as to its rights in the premises.

We do not regard this contention as having any relation to the facts of this case. On May 28, 1900, pursuant to the decree of foreclosure, the master sold the property described in the deed of trust and the decree for the sum of $5,550 to the complainant in the foreclosure suit, James Longley, and delivered to him a certificate of purchase. In his report of the sale the master says that he received from the sale the above amount of money and that he paid to James Longley, the complainant, $4,914.58 to apply on the original debt, leaving a deficiency of $416.05 still due to the complainant. This report of sale and distribution was confirmed by the court on June 8, 1900. The confirmation of the sale related back to the day of sale. At this point of time, the deed of trust had expended its force, and the property described in it was no longer subject to the deed. "The cause of action was merged in the foreclosure and sale, and all the rights and liabilities growing out of the trust deed were transferred to the decree. When a mortgage is foreclosed by suit the decree of the court becomes the basis of title. (United States Mortgage Co. v. Gross, 93 Ill. 483.) By the decree, and the execution thereof, the legal liability was transferred to the decree. The debt was merged in the decree and the rights and liabilities growing out of the trust deed were fixed by such decree and to be enforced through its provisions. Wayman v. Cochrane, 35 Ill. 152."

Therefore prior to the time of the destruction of the church building by fire, May 29, 1900, the trust deed had been extinguished; and it cannot be considered that the insurance took the place of the destroyed building under the trust deed which by the decree became *functus officio*, and no longer existed. Ogle v. Koerner, 140 Ill. 170; Seligman v. Laubheimer, 58 id. 124. "Nor does it in any

way affect the result that the holder of the secured indebtedness becomes the purchaser at the sale, whether he be the mortgagee or *cestui que trust*, or not. By becoming the purchaser a new relation created by the statute exists, in no wise dependent upon any privity of contract between the purchaser and mortgagor." Lightcap v. Bradley, 186 Ill. 510:

In Davis v. Dale, 150 Ill. 239, it was said: "The contention of counsel for appellant that in some way the purchaser at the master's sale acquired equities, for the payment of taxes by the grantor, is equally untenable. By virtue of the lien created, the mortgagee or *cestui que trust* had the right to have the security foreclosed and the property sold, and the proceeds applied in payment of the secured debt. But when this had been done and the lien enforced by a sale of the property and the proceeds applied, the mortgage or trust deed has expended its force, and the property is no longer subject to its provisions."

It follows then that Stephen W. Rawson, appellant, had ceased to be the trustee in the deed of trust, and no longer held any trust relations to the property or to Longley, the *cestui que trust* under the trust deed before the destruction of the building. This relation, by the foreclosure of the lien and the proceedings hereunder, was terminated as effectually as if the debt secured had been paid and the trust deed released. King v. Insurance Co., 7 Cush. 1.

As between Bethesda Baptist Church, appellee, and Longley, the purchaser, appellee still held the title to the property, with this qualification that by the decree and sale the amount and time of redemption had become fixed, and a failure to redeem within the allotted time would divest its estate. On the other hand, Longley had acquired by virtue of the sale and the master's certificate the right to have the property at the end of the period of redemption, in the event no redemption was made. Stephens v. Illinois Mutual Fire Ins. Co., 43 Ill. 327; Lightcap v. Bradley, *supra*, and cases there cited; 1 Jones on Mortgages, Sec. 398; Royal Ins. Co. v. Stinson, 103 U. S. 30. So that

at the time of the fire the appellee church held the title to the property and had the right to the rents, issues and profits thereof, and had the right of redemption. This was an insurable interest. It had procured the insurance and paid for it, and was entitled to the money in question.

The argument of appellant in support of his contention is based upon the provision of the policy which contained the usual mortgage clause making the loss, if any, payable to appellant as trustee, and the action of appellee in endorsing the draft.

The fact that the agent of the insurance company made his draft payable to the joint order of the trustees of the church and, appellant, as trustee, and then induced the trustees of the church to endorse it in blank and then himself delivered it to appellant, did not, we think, constitute a payment by appellee to appellant, or in any way affect the rights of appellee to the money. The delivery of the draft to appellant was not payment. It was only the means of obtaining payment, in the absence of an agreement between the parties that it should constitute payment of the debt. Woodburn v. Woodburn, 115 Ill. 427. The draft had to be accepted and honored by the insurance company before there was any payment. The only payment that was made was by the insurance company to appellant and appellant received the money, not in his own right, but for and on behalf of appellee. Brown v. Leckie, 43 Ill. 497. The draft was made payable to the joint order of the church trustees and appellant as trustee, as a mere matter of precaution, and the agent of the insurance company did not part with it until after its endorsement by the trustees of the church, and then he himself delivered it to appellant.

Under the contract of insurance the company was not bound to pay the money to appellee, but was bound to pay it to appellant as trustee. When his right to receive it as trustee ceased by virtue of the foreclosure proceedings, as we have seen, he could receive the money as the agent of appellee only, and when he collected it he became bound to

Col. Ex. Salvage Co. v. Union Casualty & Surety Co.

account for it to appellee. 1 Jones on Mtges., Sec. 409; King v. State Mutual Fire Ins. Co., *supra.*

When appellant received the insurance money he paid the deficiency decree entered in the foreclosure case; and thus the entire indebtedness to Longley was paid. Longley had no claim upon the money, therefore, in the hands of appellant, and appellant was bound to account to appellee for the balance of the fund in his hands.

No question is raised by appellee here as to the propriety of the payment of the deficiency decree.

The judgment of the Superior Court is affirmed.

*Affirmed.*