[No. 13156-4-III.    Division Three.    May 4, 1995.]

ALAN D. WILMA, *Appellant*, v. GRANT HARSIN, ET AL, *Respondents*.

*John A. Troberg,* for appellant.

*Richard W. Kuhling* and *Paine, Hamblen, Coffin,* for respondents.

PER CURIAM. — This case involves an appeal by Alan D. Wilma from a Stevens County Superior Court order vacating a default judgment against Grant and Carol Harsin. Following Mr. Wilma's appeal, this court set the matter on its motion on the merits docket. Commissioner Frank Slak of this court granted the motion on the merits and affirmed the trial court's decision vacating the judgment. We then granted Mr. Wilma's motion to modify the commissioner's ruling. This court now affirms the trial court, adopting the well-reasoned ruling of our commissioner, filed August 22, 1994, which follows:

In 1989, Ms. Harsin hired Mr. Wilma, a certified public accountant, to help her sell Vaagen Brothers Lumber Company stock back to the company. According to an affidavit by

Ms. Harsin in support of the motion to vacate the default judgment, there was no written fee agreement. After the stock was sold, Ms. Harsin and Mr. Wilma disagreed over the terms and amount of fees he claimed for the negotiations. By March 10, 1990, through lengthy negotiation, Ms. Harsin had paid approximately $20,271 in settlement of the claim. She had attempted to settle the dispute for substantially less and believed the amount she paid constituted over-reaching by Mr. Wilma.

Nonetheless, from March 1990 through July 1991, Mr. Wilma sent Ms. Harsin a series of billings claiming she still owed him $29,729. On July 31, 1991, Vaagen Brothers agreed to pay $20,000 on Ms. Harsin's behalf. At that point Ms. Harsin believed the matter was resolved and that Mr. Wilma had extracted an exorbitant fee.

However, on September 12, Ms. Harsin received a summons and complaint in an action to recover the $29,729 balance Mr. Wilma believed still due. In a letter attached to the summons and complaint, John Troberg, Mr. Wilma's attorney, wrote:

> Accompanying this letter you will find a Summons and Complaint on the debt owed to Al Wilma. Mr. Wilma feels that you received a very favorable outcome on your negotiations with the Vaagens and he is at a complete loss to understand why you are unwilling to respond to letters and phone calls. The service of the Summons and Complaint upon you is only as a last resort. It is not yet filed with the Court Clerk. Mr. Wilma is still more than willing to discuss a settlement of this account. If you desire to do so, please do not hesitate to contact me; otherwise, Mr. Wilma will proceed as set forth in the Summons and Complaint.

Because of the letter and "continuing settlement negotiations",[1] Ms. Harsin stated in her affidavit, she did not believe Mr. Wilma was intending to proceed with the lawsuit. She asked Richard Nichols to intervene on her behalf with Mr. Wilma and filed a notice of appearance upon Mr. Troberg on November 22.

---

[1]Mr. Wilma contends there were no ongoing negotiations, he had been unable to reach Ms. Harsin, and, accordingly, he brought suit to obtain the balance of fees he believed due.

Meanwhile, however, on October 4, Mr. Wilma moved for and obtained a default judgment against Ms. Harsin in the amount of $29,729, plus $4,808.77 interest and $205 fees and costs, for a total judgment of $34,742.77. On October 16, the following appeared in the "Superior Court" section of the local newspaper, "Alan D. Wilma vs. Grant Harsin and Carol Harsin. Collection. John A. Troberg, attorney for plaintiff." Additionally, on November 22, Mr. Nichols presented Mr. Wilma with a $2,500 offer of settlement from Ms. Harsin. According to Mr. Nichols, Mr. Wilma considered the offer insulting, advising he would later respond with how much more he wanted. Mr. Nichols said Mr. Wilma never responded or advised him that a default judgment had already been obtained.

Finally, on October 8, 1992, 1 year and 4 days after its entry, Ms. Harsin received a letter from Mr. Wilma's attorney advising her of the default judgment. Enforcement proceedings ensued, and garnishments were executed. On October 20, Ms. Harsin filed another notice of appearance through counsel, and on December 9, she filed a motion to vacate the default based on the provisions of CR 60(b)(4), (5) and (6). Finding the judgment void for a defect in the summons, the court granted the motion pursuant to CR 60(b)(5). Mr. Wilma appealed, and this court, believing the matter was clearly controlled by settled law, set the appeal on its own motion on the merits. RAP 18.14.

▇▇▇ The law governing the issues in this case is well settled in several respects. Default judgments are not favored. Proceedings to vacate them are equitable in nature, and relief is liberally afforded in accordance with equitable principles. The guiding principle is whether justice is being served; what is just and proper depends upon the facts and circumstances of each case. *Griggs v. Averbeck Realty, Inc.*, 92 Wn.2d 576, 581-82, 599 P.2d 1289 (1979); *White v. Holm*, 73 Wn.2d 348, 351, 438 P.2d 581 (1968).

▇▇▇ There is some dispute between the parties as to the applicable standard for reviewing judgments vacated in accordance with CR 60(b)(5) — whether this court should apply the more liberal "abuse of discretion" standard or

review the decision de novo as a matter of law. But it does not matter which standard applies because equally well settled is the principle that ambiguous, apparently inconsistent written communications served with a summons and which have the potential for misleading the defendant into not timely responding to the complaint warrant the vacation of a default judgment later taken.

In *Golson v. Carscallen*, 155 Wash. 176, 283 P. 681 (1930), the parties had met several times to resolve a compensation dispute, and when they were unable to satisfactorily resolve it, the plaintiffs prepared a summons and complaint, mailing it to the defendants on October 9, 1928, with a letter stating:

> "We inclose you summons and complaint in the case of Golson vs. yourself. We are mailing it to you to save the unnecessary expense of having the sheriff serve it upon you. Hoping that we may yet be able to settle the matter without court action, we have not filed the complaint and will not do so until we give you an opportunity to adjust the matter outside of court if you desire to do so. We have advised our client to let us adjust the matter outside of court if possible, and hope you will call and see us at once."

*Golson*, at 177. When the plaintiffs had not heard from the defendants 2 weeks later, they served the defendants with a copy of the summons and complaint. The summons indicated the complaint had been filed. However, when the defendants called the county clerk, they were advised the complaint had not been filed. Several times after service of the summons and complaint, the plaintiffs' attorney informed the defendant by telephone that a default judgment would be taken. The defendants called the county clerk each time, learning that no complaint had been filed. The defendants were again personally served with the summons and complaint on December 24, 1928. Apparently, they called again to determine no complaint had been filed.

Although the opinion does not reveal when the complaint was ultimately filed, on January 24, 1929, the plaintiffs obtained a default judgment because the defendants had not appeared. Two days later in the Spokane newspapers, the following appeared under the column of "New Suits Filed",

" 'Harry Golson v. John Doe Carscallen; $587 on road contract.' " *Golson,* at 179. The defendants saw the newspaper report and immediately called the county clerk to learn that, indeed, the default judgment had been filed. Three days later, the defendants retained counsel who filed a motion to vacate on February 1 although the parties deemed it filed by January 29, the day the lawyer was hired. The Superior Court refused to vacate the default judgment.

On appeal, the Supreme Court reversed, noting that although the summons served upon the defendants stated the complaint had been filed rather than that it would be filed (as prescribed by the statutory summons form), it was not void. However, when taken together with the other facts — a diligent application for vacation of the default, a prima facie meritorious defense, no interference with the rights of third parties, the misleading nature of the letter accompanying the enclosed summons and complaint and the obvious harm to the defendants — the notice provided to the defendants was insufficient to support the default judgment.

While *Golson* is factually distinguishable in some respects, its lesson is applicable here. As in that case, the letter to Ms. Harsin invites settlement negotiations within an unspecified timeframe and implies that the filing of the lawsuit would be a last resort. That is as inconsistent with the language of the prescribed summons form, *see* CR 4(b)(2), as were the letter and actual summons served upon the defendant in *Golson.* The circumstances here, including the lengthy negotiations between the parties prior to preparation of the pleadings, the postdefault negotiations through an intermediary, the lack of prejudice to any third parties, and the absence of any direct notice of the default until more than a year after it was taken, are similar to the circumstances in *Golson,* including, even, the short notice in the local newspaper.

Affirmed.